RECORD NO. 14-4748

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

GREYLING CHASE,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE  DISTRICT OF MARYLAND
BALTIMORE DIVISION

(Honorable William D. Quarles, Jr., U.S.D.J.)

**OPENING BRIEF OF APPELLANT
GREYLING CHASE**

Jonathan P. Van Hoven
JONATHAN P. VAN HOVEN P.A.
Suite 1215
One North Charles Street
Baltimore, Maryland 21201
(410) 576-0689 Telephone
jon@vanhovenlaw.com

*Counsel for Appellant*

# TABLE OF CONTENTS

Page

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Statement of Subject Matter and Appellate Jurisdiction . . . . . . . . . . . . . . . . . . . 1

Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.    THE GOVERNMENT BREACHED THE PARTIES' PLEA AGREEMENT BY ARGUING FOR AN UPWARD VARIANCE WHEN IT WAS OBLIGATED TO RECOMMEND A SENTENCE WITHIN THE GUIDELINES RANGE. . . . . . . . . . . . . . . . . . . . . . . . . 8

II.   APPELLANT'S SENTENCE OF 28 MONTHS ABOVE HIS GUIDELINES RANGE IS UNREASONABLE. . . . . . . . . . . . . . . 15

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

i

# TABLE OF AUTHORITIES

## CASES

Page

*Burns v. United States,*
    501 U.S. 129 (1991)........................................................................23

*Gall v. United States,*
    552 U.S. 38 (2007)..........................................................................16

*Irizarry v. United States,*
    553 U.S. 708 (2008)........................................................................23

*Kimbrough v. United States,*
    552 U.S. 85 (2007)..........................................................................17

*Rita v. United States,*
    551 U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007) ..............16

*Santabello v. New York,*
    404 U.S. 257 (1971)..........................................................................9

*United States v. Booker,*
    543 U.S. 220 (2005)..................................................................15, 16

*United States v. Bowe,*
    257 F.3d 336 (4th Cir. 2001) .........................................................10

*United States v. Brock,*
    108 F.3d 31 (4th Cir. 1997) ...........................................................16

*United States v. Brown,*
    500 F.2d 375 (4th Cir. 1974) .........................................................14

*United States v. Davenport,*
    445 F.3d 366 (4th Cir. 2006) ....................................................23, 24

*United States v. Dawson,*
    587 F.3d 640 (4th Cir. 2009) ...........................................................8

*United States v. Dunlap*,
    Nos. 14-50129, 2014 WL 6807733 (9th Cir. Dec. 4, 2014)............................21

*United States v. Fancher*,
    513 F.3d 424 (4th Cir. 2008) ........................................................................23

*United States v. Garcia*,
    956 F.2d 41 (4th Cir. 1992) ............................................................................8

*United States v. Harvey*,
    791 F.2d 294 (4th Cir. 1986) ..........................................................................9

*United States v. Hudson*,
    3 F.Supp.3d 772 (C.D.Cal.2014) ..................................................................21

*United States v. Henriquez,*
    757 F.3d 144 (4th Cir. 2014) ..........................................................3, 4, 6, 10, 13

*United States v. McQueen*,
    108 F.3d 64 (4th Cir. 1997) ............................................................................9

*United States v. Roberts*,
    No. CR 13–00751–R–2 (C.D.Cal. May 30, 2014) ........................................21

*United States v. Spring*,
    305 F.3d 276 (4th Cir. 2002) ........................................................................23

*United States v. Thornton*,
    554 F.3d 443 (4th Cir. 2009) ........................................................................15

## STATUTES

18 U.S.C. § 1951(a) ...........................................................................................2
18 U.S.C. § 3231 ...............................................................................................1
18 U.S.C. § 3553(a) ..............................................................................16, 21, 23
18 U.S.C. § 922(g) .............................................................................................2
18 U.S.C. § 924(c) .............................................................................................2
18 U.S.C. § 924(o) .............................................................................................2
18 U.S.C. § 1951 ...............................................................................................1

18 U.S.C. § 3742(a) ................................................................1
21 U.S.C. § 846 ....................................................................2
28 U.S.C. § 1291 ..................................................................1

U.S.S.G. §4A1.1 ..................................................................17
U.S.S.G. §4A1.1(e) ........................................................18, 19
U.S.S.G. §4A1.2(a)(2) .........................................................18
U.S.S.G. §4A1.2(b) ..............................................................18
U.S.S.G. §4B1.1 ....................................................................3

## RULES

Fed. R. Crim. P. 32(h) ..........................................................23

## OTHER AUTHORITIES

Undercover Policing, Overstated Culpability, 34 CARDOZO L.REV. 1401,
(2013) .................................................................................21

Brad Heath, Investigation: ATF Drug Stings Targeted Minorities, U.S.A. TODAY,
     July 20, 2014,
          http://www.usatoday.com/story/news/nation/2014/07/20/atf-stash-house-sting
          sracial-profiling/12800195 ..........................................................21

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

Greyling Chase appeals his sentence imposed for a conviction under United States Code, Title 18, Section 1951, for a Hobbs Act Conspiracy to interfere with commerce by robbery, to which he pleaded guilty on April 28, 2014. Appellate jurisdiction in the United States Court of Appeals for the Fourth Circuit derives from Title 18, United States Code, §3742(a) and Title 28 United States Code, §1291. This is an appeal from final judgment of the district court. References in this document to the Joint Appendix are denominated [JA (page number)].

The appeal of Greyling Chase is from a final judgment of the United States District Court for the Northern District of Maryland, entered by the Honorable William D. Quarles, Jr. on September 18, 2014. JA 7. Jurisdiction in the District Court was based upon 18 U.S.C. § 3231.

By Notice of Appeal filed on September 25, 2014, JA 7, Appellant requests this Court to review the final decision of the district court as to his conviction, pursuant to the jurisdiction conferred by 28 U.S.C. § 1291.

1

## STATEMENT OF ISSUES

**I.    WHETHER THE GOVERNMENT BREACHED THE PARTIES' PLEA AGREEMENT BY ARGUING FOR AN UPWARD VARIANCE FROM A GUIDELINES SENTENCE WHEN IT WAS OBLIGATED TO RECOMMEND A SENTENCE WITHIN THE GUIDELINES RANGE?**

**II.    WHETHER APPELLANT'S SENTENCE ABOVE HIS GUIDELINES RANGE IS REASONABLE?**

## STATEMENT OF THE CASE

Appellant was arrested on April 8, 2013 during an ongoing fake stash house robbery sting.  JA 35-6.  He was indicted on April 18, 2013 on in a five-count Criminal Indictment with Hobbs Act Conspiracy, in violation of 18 U.S.C. §1951(a); Conspiracy to Distribute a Controlled Substance, in violation of 21 U.S.C. §846; Conspiracy to Possess Firearms in Furtherance of a Drug-Trafficking Crime and a Crime of Violence, in violation of 18 U.S.C. §924(o); Possession of Firearms in Furtherance of a Drug-Trafficking Crime and a Crime of Violence, in violation of 18 U.S.C. §924(c); and Possession of Firearms by a Convicted Felon, in violation of 18 U.S.C. §922(g).). JA 9-14.  Appellant entered a plea of not guilty.  JA 4.

The parties were able to execute a written plea agreement that was filed with the district court on April 28, 2014.  JA 6, 32-40.  Pursuant to the agreement, the Appellant pleaded guilty to the Hobbs Act conspiracy in exchange for the

government's agreement to recommend a sentence within "the final adjusted advisory guidelines range" and dismissing the remaining counts upon sentencing. JA 32, 37. At both the time the plea agreement was executed as well as during the guilty plea proceedings, the parties believed that the Appellant qualified as a career offender pursuant to U.S.S.G. §4B1.1. JA 21-22, 36. Under career offender guidelines, it was expected that his final adjusted offense level after acceptance of responsibility would have been level 32 with a sentencing range of 151-188 months. JA 37. However, by the time of sentencing, both parties agreed that the Appellant's prior Maryland state court conviction for first degree burglary no longer qualified him as a career offender under the guidelines based on this Court's holding in *United States v. Henriquez*, 757 F.3d 144, 145-6 (4th Cir. 2014). JA 43, 48. Just prior to sentencing, Appellee filed a memorandum acknowledging that while the guidelines range was now 77-96 months, JA 196a, "the carefully negotiated plea still remains." JA 196d. The Appellee, instead of recommending a sentence with the advisory guidelines, requested a variant sentence of 151-188 months. JA 196d.

Appellant was sentenced on September 17, 2014. JA 7. At the time of sentencing, neither party argued that the plea should be nullified, nor did the Appellant request that it be withdrawn. The Government, noting the Appellant's objection to it's argument for a variance, JA 52, nevertheless argued that it should be entitled to argue

3

for one in light of the *Henriquez* ruling's effect on the sentencing guidelines and the

parties's plea agreement.   JA 48-55.

At the conclusion of the hearing, the district court, without prior notice that it

intended to do so, departed  upwardly from the sentencing guidelines by one offense

level and imposed a sentence of 105 months. JA 73-4.  This appeal timely followed.

JA 92.

## STATEMENT OF FACTS

The parties stipulated to the following statement of facts at the time of the plea

agreement in this case:

In March 2013, a confidential source of information (CS) working
for the Baltimore Police Department (BPD) and the Drug Enforcement
Administration (DEA) met with Greyling Chase, at a location in
Baltimore, Maryland. During the meeting, the CS proposed that he and
Chase rob a drug trafficker that the CS stated would have a large quantity
of narcotics. Unbeknownst to Chase, the drug trafficker was fictional.
Chase agreed to commit the robbery and arranged to contact the CS at a
later date.

On March 29, 2013, the CS met with Chase at a location in
Baltimore City to discuss the planned robbery. During the meeting,
which was audio and video recorded, the CS told Chase that the target
drug trafficker would have 10 kilograms of cocaine in a stash house in
Baltimore City and that he and Chase could rob the stash house and split
the stolen cocaine evenly between them. The CS asked Chase if he had
a firearm available to commit the robbery and discussed that it might be
necessary to kill the target trafficker. Chase confirmed that he would
bring a firearm to the robbery and agreed that it might be necessary to kill
the target. Chase also agreed to enlist an associate to help commit the

4

robbery.

On or about April 5, 2013, at the direction of law enforcement, the CS met with Chase and Rodney Ellis (who Chase had enlisted to assist in the robbery) at a location in Baltimore City. During the meeting, which was audio and video recorded, the CS explained how the robbery would be committed, confirmed that the target trafficker would have 10 kilograms of cocaine, and reiterated that he (the CS) would keep half of the stolen cocaine and that Chase and Ellis could keep the remaining half. The CS told Ellis that it might be necessary to kill the target drug trafficker to effectuate the robbery; Ellis confirmed that he was willing to do so. The CS also asked Ellis if he had a firearm available to commit the robbery. Ellis confirmed that he would be armed.

On April 8, 2013, the CS met with Chase and Ellis at a location in Baltimore City in order to commit the planned robbery. The CS again explained how the robbery would be committed and Chase and Ellis confirmed that they were prepared to take part. The CS left the area (ostensibly to locate the target stash house) and then called Chase and Ellis a short time later to direct them to the stash house location. Chase and Ellis began driving towards the location provided at which time Chases vehicle was stopped by law enforcement and Chase and Ellis were placed under arrest. A search of Chase's vehicle recovered a Ruger P89 9mm handgun and a FN 9 .32 caliber handgun. Prior to their recovery by investigators, Ellis and Chase possessed both weapons and did so in furtherance of their conspiracy to rob a person they believed to be a drug trafficker.

Chase was subsequently Mirandized and agreed to be interviewed. During that interview, Chase admitted that he planned to participate in the robbery of 10 kilograms of cocaine and that he understood that firearms would be used to facilitate the robbery. Chase also admitted that he had obtained a firearm to use to facilitate the robbery.

JA 35-36.

5

## SUMMARY OF THE ARGUMENT

Appellant raises two issues on appeal. First, the Government breached its obligation under the plea agreement to recommend a sentence within the final advisory guidelines when it argued for a variant sentence that would have been approximately twice the final guidelines range as found by the district court and agreed by the parties at the time of sentencing. Second, the district court's ultimate sentence of 105 months, which was above Appellant's advisory guidelines range of 77-96 months, was unreasonable.

In this case, the parties memorialized their plea agreement in a written letter drafted by the Government which was accepted by the district court. The agreement specifically stated that at the time of sentencing, the Government "will make a recommendation within the final adjusted guideline range..."   While the parties originally anticipated that Appellant would be designated as a career offender and be subject to a much higher sentencing range under the guidelines, this Circuit then issued its opinion in *Henriquez* which held that a Maryland state court conviction for first degree burglary does not qualify a as a crime of violence under the United States Sentencing Guidelines.

At the time of sentencing, the range of imprisonment that was ultimately agreed by parties and the district court was in fact 77-96 months. The Government, however,

argued for 151-188 months, twice the sentence range advised by the guidelines. It's rationale was a matter of confusion to the district court. After much questioning by the district court as to whether the government believed that the plea agreement should still stand, and even after the Government acknowledged that its position was in direct opposition to what the Appellant believed was bargained for by the parties, it still argued for the variance. This breach was extremely prejudicial to the Appellant because he was made to appear from the point of view of the Government as someone whose advisory guidelines did not fit the seriousness of the admitted conduct. This impermissible argument was then accepted by the district court when it departed upwardly from the guidelines.

Additionally, the sentence imposed by the district court was unreasonable. After hearing arguments from Appellant, the district court stated the rationale for the final sentence to be imposed, and listed a series of convictions, almost all of which occurred more than 23 years prior to this incident. While giving only passing consideration to the Appellant's severe heroin addiction and making no comment as to the unusual nature of this sting operation, the court focused on Appellant's mostly decades-old prior convictions. This recitation further included a statement that Appellant was recently convicted of an assault charge in 2004, even though he had not been convicted of such conduct since 1990.

7

Finally, at the very end of the sentencing proceedings, the district court elected to upwardly depart from the guidelines by one level without giving notice to the Appellant of its intention to do so.  This left Appellant no opportunity to make any argument on the issue of whether such a departure was reasonable.

## ARGUMENT

**I.    THE GOVERNMENT BREACHED THE PARTIES' PLEA AGREEMENT BY ARGUING FOR AN UPWARD VARIANCE WHEN IT WAS OBLIGATED TO RECOMMEND A SENTENCE WITHIN THE GUIDELINES RANGE.**

When a party claims that there has been a breach of a plea agreement, the Court views the district court's factual findings for clear error and its "application of principles of contract interpretation *de novo*." *United States v. Dawson,* 587 F.3d 640, 645 (4th Cir. 2009).

Consistently with the law of contracts, parties who enter plea agreements to resolve criminal cases should receive the benefit of their bargain.  *Ibid*.  Moreover, when the contract is between the government and the accused, "both constitutional and supervisory concerns require holding the government to a greater degree of responsibility than the defendant...for imprecisions or ambiguities in plea agreements." *United States v. Garcia*, 956 F.2d 41, 44 (4th Cir. 1992).

Additionally, this Circuit has long held that these fundamental principles require

8

that ambiguities in this regard must be construed against the government. *United States v. Harvey,* 791 F.2d 294, 303 (4th Cir. 1986). Ultimately, if the government fails to fulfill a promise that was part of the inducement for a guilty plea, then it is in fact in breach of the agreement. *See Santabello v. New York,* 404 U.S. 257, 262 (1971). In a case where there was no more than an oral agreement whose breach by the government was not even formally objected to at the time of sentencing, this Court reversed on a plain error review, finding a breach on the part of the government to violate the very heart of the both the constitutional rights of the accused and the honor and integrity of the entire criminal justice system. *United States v. McQueen*, 108 F.3d 64, 66 (4th Cir. 1997).

With regard to the written plea agreement in this case, the one material change between the time of the plea and sentencing was the change in the advisory guidelines sentencing range due to the removal of Appellant's career offender status. The re-calculation of the advisory guidelines range should not, and did not, lead to either party's desire to abandon the plea in this matter.

As with any case, the ultimate calculations as to the appropriate sentence are made by the district court after consideration of not just the parties' calculations, but those of U.S. Probation. In fact, the express language in the written plea agreement executed by the parties contains the following:

The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what the guidelines range or sentence the Defendant will receive. The Defendant understands that no one has made such a binding prediction or promise.

JA 39.

The obligations of the parties at the time of sentencing, which constitute the essential backbone of the plea agreement, were clear as day. Pursuant to the agreement the government agreed as follows:

At the time of sentencing, this Office will recommend a sentence within the final adjusted guidelines range and move to dismiss any open counts against the Defendant.

JA 37 (Emphasis added).

With this clear and mutual understanding between the parties, the only matters that were no longer applicable in light of *Henriquez* were the portions of the agreement that contained the incorrect calculations, such as the estimated guidelines range stipulations in Paragraphs 7(b) and (c), and the waiver of appeal range in Paragraph 12(b).[1] JA 36-8. However, the Appellee's contractual obligation to argue within the final adjusted guidelines range was completely unambiguous. There was

---

[1]  Even assuming arguendo that the new sentencing guidelines calculations would not necessarily require an adjustment of the range of limitations in the appeal waiver paragraph, that section's language is immaterial in this case because a waiver of appeal is not enforceable when either party has materially breached the plea agreement. *United States v. Bowe*, 257 F.3d 336, 342 (4th Cir. 2001).

10

no numerical range in that passage, only the language that the government would "make a recommendation within the final adjusted guideline range and move to dismiss any open counts against the Defendant." JA 37. Logic dictates that one would not expect such a routine passage to indicate a particular numerical range because the parties clearly understood that until such time as the district court determined the guidelines, the exact range was not yet established.

To be clear, neither party wished to withdraw the plea and renegotiate the matter. Appellee's position as to what it believed it was entitled to argue was unclear, compelling the district court at one point to state to the Government:

> I'm somewhat confused, because you seem to be arguing at the same time that the Court should not enforce the agreement; on the other hand, it should enforce the agreement.

JA 51. The transcript of the Appellee's attempt to address the obvious confusion did not help:

> I'm not saying you should enforce the agreement, your Honor. I think the Court should find the PSR that came back yesterday to be the appropriate sentence or the appropriate guideline range and calculations. I do think the Court can then say that, yes, that's all true, a variance sentence is appropriate in these particular circumstances given the factors that I laid out under § 3553(a) in my sentencing memorandum yesterday.

JA 51-52.

This statement makes it clear that that while the Government no longer wanted

11

the court to restrict its ability to argue for a variance, it still wanted to enforce the basic guilty plea itself.  In fact, the Government did not suggest that the agreement was voided; rather, it simply acknowledged the changes that it believed were required by the new calculated guidelines.  On this point, the following colloquy occurred:

| | |
|---|---|
| [The Court]: | The agreement hasn't changed. |
| [Government Counsel]: | Correct.  The agreement hasn't changed. The basis upon which the agreement was made was adjusted, if you will, by the Court's decision in *Henriquez.* |
| [The Court]: | Well, if you're applying contract principles, it would be sort of mutual mistake? |
| [Government Counsel]; | I think you could-- |
| [The Court]: | Actually, not quite mutual mistake, because you were negotiating under the law as it was understood two months before-- |
| [Government Counsel]: | Correct. It wasn't a mistake. It was just a -- you know -- |
| [The Court]: | Changed circumstances. |
| [Government Counsel]: | --changed circumstances that altered the agreement. |

JA 53 (Emphasis added).

The colloquy between the Government and the court concluded as follows:

| [Government Counsel]: | So now we're left with the adjusted guidelines because of the *Henriquez* case. I do believe, as Probation has pointed out, that the PSR that was filed yesterday is the appropriate place the Court should start -- start its analysis of an appropriate sentence for Mr. Chase after his plea -- his Rule 11 colloquy. |
|---|---|
| [The Court]: | Why not, finding no agreement, simply let you all renegotiate? |
| [Government Counsel]: | Well, Your Honor, I think the Court could do that under the circumstances. I don't think we'd get there, very candidly. I don't think it's -- the Government's in a position to say that Mr. Chase should be able to withdraw his plea at this point, because I think that's the only thing the Court can really do, and the Court's found Mr. Chase guilty. So, I mean, it would be a Rule 11 colloquy. I think we're both of the opinion that the sentencing should go forward today. I just am advocating for a sentence closer to the original sentence that was anticipated by the parties, and, candidly, Mr. Van Hoven is not asking for a walk. He's just suggesting that the sentence should be closer to what the Defendant's guidelines are now. And I'll submit on that, Your Honor. |
| [The Court]: | He's asking for a guidelines sentence as I read his memorandum. |
| [Government Counsel]: | That's exactly right. Bottom of the guidelines. That's exactly right. Okay. I'll submit. |

JA 54-5.

13

It is the carefully negotiated guilty plea, and the benefit of that bargain, that is the heart of the matter. Here, the government clearly and unequivocally contracted to keep its recommendations within the advisory guidelines, which are never definitive until they are finally calculated by the district court. In exchange for this, the Appellant gave up all of his constitutional trial rights and alleviated the government's burden and expense of proving his guilt beyond a reasonable doubt.

It is such a written and enforceable agreement upon which the Appellant must be able to rely, for he is counting in part on the valuable benefit of the persuasive influence that the Government's recommendation will have on the court's ultimate decision about the appropriate sentence. In *United States v. Brown,* 500 F.2d 375 (4th Cir. 1974), this Court reversed a sentence when the government only half-heartedly recommended the disposition which it bound itself to request at the time of sentencing. *Id.* at 378. This Court in *Brown* articulated the bargained-for value that a government prosecutor's recommendation has on a sentencing court:

> We have no occasion to consider the propriety of sentence, or recommendation as to sentence, as an element of a plea bargain, but it is manifest that the consideration which induced defendant's guilty plea was not simply the prospect of a formal recitation of a possible sentence, but rather the promise that an Assistant United States Attorney would make a recommendation on sentencing. This could reasonably be expected to be the sound advice, expressed with some degree of advocacy, of government officer familiar both with the defendant and with his record and cognizant of his public duty as a prosecutor for the United States.

14

> Undoubtedly the district court had this understanding of the role of an Assistant United States Attorney at sentencing when he sought the prosecutor's recommendation.

*Id.* at 377.

Here, the Government's position left no real benefit to the plea agreement, other than the abandonment of other counts.  Such a "bargain" is without any real benefit because Appellant might not have otherwise even received a lengthier sentence than what was being advocated by the Government.  Even if he were to have also been sentenced on the abandoned counts, the Government was now requesting a sentence on the one count that would have been double the length called for under the guidelines anyway.  It would be no different than simply outright pleading guilty and throwing oneself at the mercy of the court without <u>any</u> agreement with the Government, and thus losing all benefits of a carefully negotiated plea bargain.

## II.      APPELLANT'S SENTENCE OF 28 MONTHS ABOVE HIS GUIDELINES RANGE IS UNREASONABLE.

This Court reviews a district court's sentence under a standard of reasonableness.  *United States v. Booker,* 543 U.S. 220, 260-261 (2005).  "When considering a sentence's reasonableness, [this Court] reviews the district court's legal conclusions *de novo* and its factual findings for clear error."  *United States v. Thornton,* 554 F.3d 443, 445 (4th Cir. 2009) (Internal quotations omitted).

15

While the United States Sentencing Guidelines are no longer binding on the sentencing judge pursuant to *Booker,* the district court must consider the Guidelines in imposing a "reasonable" sentence as a factor among the others set forth in 18 U.S.C. §3553(a).  *See* Booker, 543 U.S. at 764-7.  Additionally, although it is now well settled that district courts may, post-*Booker,* even consider a different sentence than otherwise calculated under the advisory guidelines; *see, e.g., United States v. Brock*, 108 F.3d 31 (4th Cir. 1997); *Gall v. United States,* 552 U.S. 38 (2007);  18 U.S.C. §3553(a) requires a district court to impose a sentence "sufficient but not greater than necessary" to comply with sentencing goals.  Therefore, it must consider the "history and character of the defendant" and the "nature and circumstances of the offense" including the "seriousness of the offense."  Further, §3553(a) mandates that a district court impose a sentence that, among other factors, promotes respect for the law, provides just punishment, protects the public from further crimes by the defendant, provides the defendant any necessary treatment, and avoids unwarranted disparities between similarly-situated defendants.  Additionally, a court may consider whether that provision fails to properly reflect §3553(a) considerations, reflects an unsound judgment, does not treat defendant characteristics in the proper way or that a different sentence is appropriate regardless, *see Rita v. United States*, 551 U.S. 338, 350-56, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007); and even decline to apply certain provisions

16

based on other considerations, including disagreements with the guidelines. *Kimbrough v. United States*, 552 U.S. 85, 111 (2007).

**A.   The guidelines, as calculated, unreasonably over-represented the Appellant's Criminal History.**

During the colloquy on the issue of how many criminal history points should have been assessed for Appellant based on his prior convictions, it was undisputed that he was convicted of robbing two individuals in an incident that occurred on March 10, 1990:  he was found guilty of two counts of robbery with a deadly weapon and one count of use of a handgun in the commission of a crime of violence.  JA 176.

On December 19, 1990, he was sentenced to 20 years. JA 176.  The instructions for calculating a defendant's Criminal History Category are listed in U.S.S.G. §4A1.1, which provides for three points for each "prior sentence" of imprisonment greater than one year and one month.  However, instead of assessing three criminal history points for this sentence, U.S. Probation assessed at a fourth point for a total of four criminal history points for this one criminal occurrence.  JA 176.  This calculation of one extra point was crucial here, as it shifted Appellant from Criminal History Category IV to Category V, thus significantly increasing the sentencing range at Offense Level 22 from 63-78 months to 77-96 months.

The application notes in the commentary to U.S.S.G. §4A1.1 direct the district

17

court to §4A1.2(b) for the definition of the term "prior sentence" for determining

whether to assess separate criminal history points.  §4A1.2(a)(2)  provides:

> If there is no intervening arrest, prior sentences are counted separately
> unless (A) the sentences resulted from offenses contained in the same
> charging instrument; or (B) the sentences were imposed on the same day.
> Count any prior sentence covered by (A) or (B) as a single sentence.  *See
> also* §4A1.1(e)[2].

(Emphasis added)

As noted by Appellant at the time of sentencing, and undisputed by the

Government, the only reason why U.S. Probation imposed one additional point for

total Criminal History was due to the clerical matter of the Circuit Court for Baltimore

City having utilized separate indictment numbers for each robbery count, even when

the matter undisputedly encompasses offenses committed in one incident. JA 44. The

guidelines clearly instruct that such a matter is to be counted as a "single sentence"

and no more than three criminal history points can be assessed for the one robbery

incident, regardless of the amount of robbery counts or charges stemming from the one

incident of prior criminal conduct.

If one were to enforce the application of this section in cases like this in the

---

[2]§Section 4A1.1(e) provides:
Add 1 point for each prior sentence resulting from a conviction of a
crime of violence that did not receive any points under (a), (b), or (c)
above because such sentence was counted as a single sentence, up to
a total of 3 points for this subsection.

18

manner suggested by U.S. Probation and accepted by the district court, unreasonable applications ensue. For example, if there were a commonplace robbery of four individuals standing together at a street corner and each of the victims is, simply for clerical clarification purposes, listed in a separate charging document (just as was done here in Appellant's prior robbery case), the district court's interpretation in this case would mandate <u>six</u> criminal history points to be assessed for just that one incident, which is twice the points that one would receive for any other crime--even murder–that warranted the highest assessment of three points.

Such an unreasonable application would result even if the <u>total</u> sentence imposed for the one robbery incident was no more than one year and one month. A heavy-handed application would assess three points for the first victim in the first charging document and up to three more points under §4A1.1(e) if the lower court were to treat "each prior Sentence" separately just because there was a "single sentence" without considering that the matter involved one incident. While §4A1.1(e) has a three point limitation, the application of this section to situations involving one incident would result in an unreasonably higher criminal history points calculation than what Appellant's actual record should warrant under the Advisory Guidelines.

**B. The district court incorrectly stated Appellant's actual criminal history.**

At the time of sentencing, the district court recounted Appellant's criminal

history:

> Mr. Chase is 54 years old and has adult convictions for breaking with intent to steal and malicious destruction, 1978; handgun violation, 1982; storehouse breaking, 1985; theft, 1988; unauthorized use, 1988, 1990; malicious destruction, 1988; robbery with a deadly weapon in 1990, two convictions there; assault in 2004 and first-degree burglary in 2005; possession of heroin in 2011. Nine other arrests did not lead to convictions.

JA 72-3 (Emphasis added).

Neither the Presentence Report nor any other part of the record lists any assault conviction from 2004.[3] The district court's mistaken belief that Appellant committed an assault in 2004 undermined counsel's position that Appellant was far-removed from his assaultive past at the time he succumbed to the unsolicited invitation of the government's cooperator in this case. In fact , there was a 23 year gap since Appellant was last convicted of any such conduct. JA 173-78. Appellant extensively argued about his long struggle to rehabilitate himself and gain a legitimate foothold in society with gainful employment, significant attempts to obtain counseling to remain sober and his new role as a caring father. JA 138-46, 194-5. However, the district court's mistaken belief that Appellant was engaged in assaultive conduct as recently as 2004 unfairly belied Appellant's argument with regard to these significant efforts to take a

---

[3]The record  reveals only one prior assault conviction from March 10, 1990, which appears  to be related to his  1990 robbery  convictions which  also have the same date of arrest.  JA 177.

positive path upon his re-entry into society, and instead only served to unfairly suggest

a need to impose an even greater sentence than that called for by the guidelines.

**C. The district court failed to adequately consider mitigating factors under 18 U.S.C. §3553(a) when coupled with the troubling nature of the Government's use of this particular sting operation.**

As noted by the agreed statement of facts, this entire matter was born from the

fictional creation of the Government, its agents and a cooperator.[4]    The unusual

nature of this particular fake stash house sting and its influence on the Appellant at

such a significant turning point in his life was given virtually no consideration by the

court.  Appellant's positive background and mitigating history was well-documented

at the time of sentencing.  JA 181-3.  Yet these §3553(a) factors were given only the

briefest consideration by the court.  Essentially, the only comments by the court at the

time of imposition of sentence with regard to Appellant's background and personal

history were the following:

---

[4] These  sting operations, while  upheld  by other Circuits, have  nevertheless
come under great scrutiny in the last few years.  *See* Brad Heath, Investigation:
ATF Drug Stings Targeted Minorities, U.S.A. TODAY, July 20, 2014,
http://www.usatoday.com/story/news/nation/2014/07/20/atf-stash-house-stingsraci
al-profiling/12800195/*; United States v. Hudson*, 3 F.Supp.3d 772 (C.D.Cal.2014),
rv'd,  *United States v. Dunlap*, Nos. 14–50129, 14–50285, 2014 WL 6807733 (9th
Cir. Dec. 4, 2014); *United States v. Roberts*, No. CR 13–00751–R–2, 3, 5
(C.D.Cal. May 30, 2014); *Undercover Policing, Overstated Culpability*, 34
CARDOZO L.REV. 1401, 1446–51 (2013).

Mr. Chase is somewhat unusual of my defendants in that he was born in Baltimore to married parents and raised by both of them, although that, I gather, was not an entirely good thing since it appears that his father was abusive during Mr. Chase's childhood. Mr. Chase's drug use stems from his teens, first use of heroin at age 16 or 17, first use of marijuana at age 13, and he's also used cocaine. To his credit, he has obtained a GED and has some college credits. The Defendant is a 54-year-old person with twelve prior adult convictions. He's had the opportunities of community supervision. He's been in prison. Neither of them apparently has been a deterrent. In fact, was on community supervision for robbery deadly weapon, common law assault, and first-degree burglary when this crime was committed.

JA 73.

The nature and extent of Appellant's successful endeavors to better himself at the time he encountered the cooperator deserved more consideration. Appellant, now in his fifties, battled heroin addiction for his entire life and already paid a heavy price for the misconduct that he committed in his twenties. JA 182. He more recently found himself in a much improved situation. He was in a long-term relationship and became the proud father of a young child. JA 181. He had finally gained lawful, meaningful employment and was seemingly turning a corner in his life. JA 183. Then, during the brief setback with both his employment and sobriety, he had a chance encounter with the source, wherein that individual opportunistically suggested to him a "plan" that had already been used by the Government in other cases with this same paid cooperator. JA 67-8. To someone in Appellant's position, it was the equivalent of

22

finding a winning lottery ticket when he most needed some good fortune. Such circumstances warranted a disposition that would more reasonably be within the low end of the guidelines pursuant to 18 U.S.C. §3553(a).

**D.    The district court failed to provide adequate notice that it was considering a sentence above the advisory guideline range**.

The district court must give reasonable notice that it is considering a higher sentence than the calculated guidelines. *Burns v. United States,* 501 U.S. 129, 135 (1991), *United States v. Fancher,* 513 F.3d 424, 427 (4th Cir. 2008); *United States v. Davenport*, 445 F.3d 366, 369-70 (4th Cir. 2006); *United States v. Spring*, 305 F.3d 276, 279-80 (4th Cir. 2002). Rule 32(h) of the Federal Rules of Criminal Procedure provides:

> Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's rehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

Here, regardless of any comments made during the proceedings by the parties or the district court as to the severity of Appellant's prior criminal history or whether a <u>variance</u> was justifiable[5], the district court did not give proper notice that it was

---

[5]Rule 32(h) does not require the same notice with regard to a variance as it does with a departure. *Irizarry v. United States*, 553 U.S. 708, 716 (2008).

23

actually contemplating a <u>departure</u> under the Advisory Guidelines. Nonetheless, at the conclusion of the proceedings wherein the sentence was imposed, the court stated:

> This is a serious offense. I think the Category V understates the seriousness of the criminal record. So, for that reason, I am going to <u>depart upwardly</u> one level... and sentence the Defendant to...105 months.

JA 73-4(Emphasis added). As this was not stated until the actual imposition of sentence, it left Appellant no opportunity to address the court's apparent contemplation of a departure prior to the imposition of sentence.

The situation at bar is the same as in *Davenport*, wherein this Court vacated and remanded the defendant for re-sentencing after the district court stated that it was going to impose an upward departure above the guidelines at the very conclusion of that sentencing, thus giving counsel no opportunity to argue against it. *Davenport,* 445 F.3d at 369. Based on the district court's failure to give proper notice of its intention to depart, Appellant respectfully submits that this violation warrants a remand to give him an opportunity to argue against such a departure.

## **CONCLUSION**

For the foregoing reasons, Appellant respectfully requests that this Court reverse the judgment of the United States District Court for the District of Maryland and remand for sentencing.

24

Respectfully submitted,


/s/ Jonathan P. Van Hoven
Jonathan P. Van Hoven
Jonathan P. Van Hoven, P.A.
One North Charles Street
Suite 1215
Baltimore, MD 21201
(410) 576-0689
On behalf of Appellant


## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests permission to state orally, before a panel of Judges of the Fourth Circuit United States Court of Appeals, why he should receive a new sentencing.

25

## <u>CERTIFICATE OF COMPLIANCE</u>

A.    This brief has been prepared using fourteen point, proportionally spaced typeface, specifically WordPerfect, Times New Roman, 14 point.

B.    Exclusive of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes or rules, this brief contains 5,909  words.

I understand that a material misrepresentation can result in the Court's striking this brief and imposing sanctions.

/s/ Jonathan P. Van Hoven
Jonathan P. Van Hoven

26

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2015, I electronically filed the foregoing

Opening Brief with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to:

James T. Wallner
Office of the United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
james.wallner@usdoj.gov

Counsel for Appellee

/s/ Jonathan P. Van Hoven
Jonathan P. Van Hoven

27